KATHERINE MARX, Respondent, v. ONTARIO BEACH
HOTEL AND AMUSEMENT COMPANY, Appellant.

Negligence — evidence — hypothetical questions as to effect of
injuries caused by negligence of defendant's employee — errone-
ous allowance of such questions when not based upon facts
proved by evidence and stated in the questions.

1. Where negligence of a person is predicated upon some omis-
sion of duty it is always necessary to inquire whether the derelic-
tion is of such character as will be likely to invite or produce injury
to others. It is different, however, when the alleged negligence
consists in some affirmative and wrongful act, for in such a case the
wrongdoer is not excused by his failure to foresee the consequences.

2. The defendant maintained a place for public amusement and
entertainment. The plaintiff purchased three tickets which she
gave to one of her two companions, who handed them to the
attendant at a turnstile which registered admissions, and pro-
ceeded through the stile. Plaintiff's other companion followed,
and then came the plaintiff. At the instant when plaintiff reached
the stile the attendant is claimed to have given a quick and violent
backward movement to the arms of the stile, one of which struck
the plaintiff on the abdomen with such force as to result in a phys-
ical condition which subsequently necessitated a serious surgical
operation, for which injury she seeks to recover. Held, that the
trial justice properly submitted the case to the jury upon the
theory that the operator did not merely stop the movement of the
stile, but gave the arms a sudden backward movement permitted
by the mechanism connected with them, which was under his
control.

3. Where a hypothetical question, framed for the purpose of
showing the character of plaintiff's injuries, was based in part upon
facts "as shown by the evidence here," or "as shown by the evi-
dence in the case," it was erroneously allowed. An expert witness
may not draw inferences or state conclusions from the testimony
of other witnesses. His opinion must be based upon facts which
are stated in the form of a hypothetical question.

4. Plaintiff claimed that she suffered an operation as the result of
her injuries, which was disputed by defendant. Experts for plain-
tiff were allowed to give affirmative answers to the questions: "You
think the accident here sustained by Mrs. Marx did cause the injuries
necessitating the operation?" "Did this blow which Mrs. Marx
received on the abdomen, at the time of this accident, cause the

3

injuries complained of?" *Held,* that the questions ignore any hypothesis, and call for conclusions which may not be the opinions of experts based upon stated conditions. It was error to permit these witnesses to testify to conclusions which invaded the province of the jury.

*Marx* v. *Ontario Beach H. & A. Co.,* 153 App. Div. 936, reversed.

(Argued March 26, 1914; decided April 14, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 15, 1912, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William De Graff* for appellant. There was no evidence of negligence on the part of defendant. (*McRorie* v. *Monroe,* 203 N. Y. 426; *Hubbell* v. *City of Yonkers,* 104 N. Y. 439; *Cleveland* v. *N. J. S. Co.,* 125 N. Y. 299; *Faveo* v. *T. & W. T. B. Co.,* 4 App. Div. 241; *Flynn* v. *W. D. M. Assn.,* 64 App. Div. 490; *Beltz* v. *City of Yonkers,* 148 N. Y. 67.) A new trial should be granted because of erroneous rulings on questions of evidence at the trial. (*Turner* v. *City of Newburg,* 109 N. Y. 301; *Graham* v. *Bauland Co.,* 97 App. Div. 141; *Kehoe* v. *International R. Co.,* 56 Misc. Rep. 138; *Lazarus* v. *N. Y. C. R. R. Co.,* 46 Misc. Rep. 473; *Maimone* v. *D. D., etc., R. R. Co.,* 58 App. Div. 383; *Link* v. *Sheldon,* 136 N. Y. 1; *McGuire* v. *Brooklyn H. R. R. Co.,* 30 App. Div. 227.)

*Arthur G. Dutcher* for respondent. There was ample evidence of negligence on the part of the defendant in the manner in which the turnstile was operated at the time of the accident, and the court justly and properly submitted the case to the jury. (*Edwards* v. *N. Y. & H. R. R. Co.,* 98 N. Y. 245; *Camp* v. *Wood,* 76 N. Y. 92; *Barrett* v. *L. O. B. Improvement Co.,* 174 N. Y. 310; *Deyo* v. *K. C. R. R. Co.,* 94 App. Div. 580; *Thurber* v. *H. B., M. & F. R. R. Co.,* 60 N. Y. 326; *Massoth* v.

*D. &.H. C. Co.*, 64 N. Y. 529; *Keane* v. *Vil. of Water-ford*, 130 N. Y. 188; *Feeney* v. *L. I. R. R. Co.*, 116 N. Y. 375; *Edgerly* v. *L. I. R. R. Co.*, 44 App. Div. 476; *Butler* v. *M. Ry. Co.*, 3 Misc. Rep. 453; 143 N. Y. 630.) The defendant's exceptions to the admission of expert testimony were not well taken and the evidence was properly admitted. The rulings on questions of evidence at the trial were correct. (*Stouter* v. *Mahattan R. R. Co.*, 127 N. Y. 666; *Cole* v. *F. B. Coal Co.*, 159 N. Y. 67; *Filer* v. *N. Y. C. R. R, Co.*, 49 N. Y. 42; *Turner* v. *City of Newburg*, 109 N. Y. 308; *Dougherty* v. *Milliken*, 163 N. Y. 533; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264; *Cross* v. *City of Syracuse*, 200 N. Y. 393; *Tracy* v. *M. S. R. R. Co.*, 49 App. Div. 197; 168 N. Y. 653; *Wallace* v. *Vacuum Oil Co.*, 128 N. Y. 579.)

WERNER, J. The familiar routine of our so-called negligence litigation is occasionally varied by a case, like the one at bar, which is so near the border line between nonactionable accident and the culpable act or omission from which liability flows, that it·cannot easily be classified. In the review of all such cases it is important that errors in trials, which might be regarded as harmless when there is practically no question as to a defendant's liability, should be scrutinized with strict regard for legal rules.

The circumstances at bar are quite unusual. On the 18th day of August, 1911, the defendant maintained a place for public amusement and entertainment known as Ontario Beach Park. At the entrances there were offices where tickets were sold, which were taken up by attendants stationed at turnstiles which registered the admissions. In the evening of the day named the plaintiff and two companions visited this park. The plaintiff purchased three tickets which she gave to one of her companions who handed them to the attendant and proceeded through the stile. Plaintiff's other companion followed, and then came the plaintiff. At the instant when plaintiff reached

the stile the attendant is said to have given a quick and violent backward movement to the arms of the stile, one of which struck the plaintiff upon the abdomen with such force as to result in a physical condition which subsequently necessitated a serious surgical operation to which further reference will be made later on. The reason given by the plaintiff and her witnesses for this conduct on the part of the attendant was that the latter erroneously assumed that a boy who had just passed through the stile belonged to the plaintiff's party, and that the plaintiff had handed in only three tickets for four admissions. When the plaintiff disclaimed any responsibility for the boy, the attendant released his hold upon the stile and the plaintiff was admitted to the park.

On the trial the defendant produced the turnstile at which the plaintiff claims to have sustained her injuries, and two others of the same type. Each of these machines consisted of a cast-iron base $17\frac{1}{2}$ inches in diameter which is fastened to the floor by means of bolts. Superimposed upon this base there is a column or standard 37 inches in height on the top of which there are four horizontal arms set at right angles to each other at the center and extending outward 21 inches with the outer ends 29 inches apart. Inside of the center there is a mechanism of the "dog" and "ratchet" design so connected with a foot lever that the operator can lock the arms and prevent them from turning. It was shown at the trial, however, that these arms had a backward movement at the ends of about four inches which would of course be lessened with each inch of measurement toward the center.

Since it is practically conceded that there was no mechanical defect in the stile at which the plaintiff says she was injured, it is manifest that the learned trial justice submitted the case to the jury upon the only theory warranted by the evidence, and that was that the operator did not merely stop the movement of the stile, but gave the arms a sudden backward movement to the extent of

the " play " permitted by " dog " and " ratchet " mechanism. There was evidence to justify this view of the case and, since there was no error in the charge, we conclude that the main issue was properly left to the jury.

Counsel for the defendant invokes the rule that there can be no legal liability for an accident which is so rare, unexpected and unusual that it is not to be anticipated in the exercise of reasonable care. (*Hubbell* v. *City of Yonkers*, 104 N. Y. 434; *Beltz* v. *City of Yonkers*, 148 id. 67; *Cleveland* v. *N. J. S. Co.*, 125 id. 299.) This rule is well established, but we think it has no application to the case at bar. Where negligence of a person is predicated upon some omission of duty it is always necessary to inquire whether the dereliction is of such a character as will be likely to invite or produce injury to others. It is different, however, when the alleged negligence consists in some affirmative and wrongful act, for in such a case the wrongdoer is not excused by his failure to foresee the consequences. In the case at bar the act of the defendant's employee was of such a nature that the jury were authorized to find it both negligent and willful, and it is imputable to the defendant under the law of *respondeat superior*. (*Feeney* v. *Long Island R. R. Co.*, 116 N. Y. 375; *Butler* v. *Manhattan Ry. Co.*, 143 N. Y. 630.)

There is another feature of the trial, however, in which the plaintiff is not so fortunate. It is the plaintiff's claim that, as the result of the injury which she received at the turnstile, she developed an encysted ovary and an inflamed ovarian tube, which had to be removed by a surgical operation. There was medical testimony to support the view that the physical condition which necessitated the operation might have been caused by such an accident as has been described; but there was other testimony for the defendant which tended to show that such an injury as the plaintiff received could not have caused that condition. In short, it is plain that the evidence on that subject was not merely an incident of the

trial, but it presented an issue which was sharply accentuated by the fact that the plaintiff had been compelled to submit to a similar operation, some eight years earlier, under circumstances which would have supported the conclusion that the removal of the second ovary was the natural sequel to the diseased condition which had necessitated the removal of the first.    It is self-evident, therefore, that it was important to keep the testimony of the medical experts within the bounds of well-settled legal rules.

The plaintiff called as witnesses three medical doctors. The hypothetical question which had been framed for the occasion was based in part upon facts "as shown by the evidence here" or "as shown by the evidence in the case." This was clearly erroneous.    (*Reynolds* v. *Robinson,* 64 N.Y. 589; *Guiterman* v. *Liverpool, N. Y. & P. S. S. Co.,* 83 id. 358; *Link* v. *Sheldon,* 136 id. 1.)    An expert witness may not draw inferences or state conclusions from the testimony of other witnesses.    His opinion must be based upon facts which are stated in the form of a hypothetical question.

There was still another error in the ruling upon this kind of testimony.    After these defective hypothetical questions had been allowed over the objections and exceptions of defendant's counsel, and the experts had expressed the opinion that the accident suffered by the plaintiff was a sufficient producing cause of the injuries of which the plaintiff complained, the plaintiff's counsel was permitted to ask, "You think the accident here sustained by Mrs. Marx did cause the injuries necessitating the operation?" and the witness was permitted to answer, "I do." In the case of another witness the question was even more blunt, for there it was: "Did this blow which Mrs. Marx received on the abdomen at the time of this accident, cause the injuries complained of?" and the answer was: "Taking into consideration all the facts, I think it did."    The mischief in these questions lies in the fact that they frankly ignore any

hypothesis, and call for conclusions which may not be the opinions of experts based upon stated conditions. While it is true that in many cases the cause or effect of a physical injury can be proved in no other way than by the opinions of experts specially qualified by experience and study, it is equally true that such opinions, to be of any value, must be based upon facts in evidence, and either known to the witness or assumed to be true. (Lawson Expert Ev. 107; *Filer* v. *N. Y. C. R. R. Co.,* 49 N. Y. 42; *McClain* v. *Brooklyn City R. R. Co.,* 116 N. Y. 468; *Cole* v. *Fall Brook Coal Co.,* 159 N. Y. 68.) It was for the jury to decide whether the injuries of the plaintiff were the direct result of the accident, and to that end it was proper to give evidence tending to show that, in the opinion of witnesses competent to speak upon the subject, they might have been so caused. *(Turner* v. *City of Newburgh,* 109 N. Y. 308.) It was error to permit the expert witnesses to go farther and testify·to conclusions which invaded the province of the jury.

The judgment must be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, CUDDEBACK and HOGAN JJ., concur; CARDOZO, J., dissents.

Judgment reversed, etc.